UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re                                             :      Chapter 11
:
**NORTHERN BERKSHIRE**            :      Case No. 11-_____ (          )
**HEALTHCARE, INC.,** *et al.*,[1]    :
:      (Jointly Administered)
**Debtors.**                                 :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION FOR ORDER PURSUANT TO SECTIONS
105(a) AND 366 OF THE BANKRUPTCY CODE (A) PROHIBITING
UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING
SERVICE, (B) DEEMING UTILITY PROVIDERS ADEQUATELY
ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING
PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE

Northern Berkshire Healthcare, Inc., on behalf of itself and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby files this motion (the "Motion") for the entry of an order, pursuant to sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), (a) prohibiting the Utility Providers (defined below) from altering, refusing, or discontinuing service; (b) deeming the Utility Providers adequately assured of payment on the basis of the provision of Two Weeks Deposits (as defined below) and the establishment of a Utility Deposit Account (as defined below); and (c) establishing procedures for determining additional assurance of payment. In support of the Motion, the Debtors submit the Declaration of Christopher L. Hickey in Support of Chapter 11

---

[1] The Debtors in these cases are Northern Berkshire Healthcare, Inc., North Adams Regional Hospital, Inc., Visiting Nurse Association & Hospice of Northern Berkshire, Inc., Northern Berkshire Realty, Inc., and Northern Berkshire Physicians Group, Inc.

25260636_9

Petitions and First Day Motions and Applications, sworn to on June 13, 2011 (the "Hickey Declaration"), and respectfully represent and set forth as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code.

## Background

2. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. Sections 1107(a) and 1108 of the Bankruptcy Code authorize the Debtors to continue to operate their businesses and manage their properties as debtors in possession. No trustee, examiner, or creditors' committee has been appointed in the Debtors' chapter 11 cases.

3. Northern Berkshire Healthcare, Inc. is a non-profit healthcare corporation in northern Berkshire County, Massachusetts and is the sole member of the other Debtors, all of which are also non-profit corporations. The Debtors operate the North Adams Regional Hospital and a visiting nurse association and hospice in North Adams, Massachusetts. The Debtors are one of the largest employers in Berkshire County and are the largest employer in the city of North Adams, Massachusetts. The Debtors serve a population of approximately 43,000 located in and around North Adams.

4. The Debtors have initiated these chapter 11 cases to address their over-leveraged balance sheet and effect a reorganization of their operations. The Debtors expect to

continue all hospital and other operations during these chapter 11 cases and to continue in their mission of providing high-quality medical care to the North Adams community.

5. Further details regarding the Debtors, their capital structure, and the events leading to these chapter 11 cases can be found in the Hickey Declaration filed contemporaneously herewith.

**Relief Requested**

6. By this Motion, the Debtors seek entry of the proposed interim and final orders attached as Exhibits B and C hereto (respectively, the "Interim Order" and the "Final Order"): (i) prohibiting the Utility Providers from altering, refusing, or discontinuing service to the Debtors except as set forth in this Motion; (ii) determining that the Utility Providers have been provided with adequate assurance of payment on the basis of the provision of Two Weeks Deposits and the establishment of a Utility Deposit Account; and (iii) approving the Debtors' proposed procedures for Utility Providers to request additional assurance of payment. Though the Debtors seek the continued provision of utility services from the Utility Providers, the Debtors are not seeking authority or direction to pay any specific claim.

**The Debtors' Utility Usage**

7. In the normal course of their business, the Debtors incur utility expenses for water, electricity, gas, sewer, waste management, oxygen, cable, and telecommunications services. These utility services are provided by utility providers (the "Utility Providers"), a non-exhaustive list of which is attached to the Motion as Exhibit A.[2] Prior to the Petition Date, the Debtors' average monthly payments to their Utility Providers aggregated approximately

---

[2] The listing of any entity on Exhibit A hereto is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code. The Debtors reserve the right to assert at any time that any entity listed on Exhibit A is not entitled to adequate assurance pursuant to section 366 of the Bankruptcy Code. The Debtors further reserve the right to terminate the services of any Utility Provider at any time. The relief requested in this Motion is with respect to all Utility Providers and is not limited only to those identified in Exhibit A.

3

25260636_9

$112,368 per month.  The Debtors anticipate that the average postpetition monthly cost for utility services during the Debtors' chapter 11 cases will be approximately the same.

        8.      Uninterrupted utility services is essential to the Debtors' ongoing operations and, therefore, to the success of their chapter 11 cases.  Should one or more of the Utility Providers refuse or discontinue service, even for a brief period, it would severely disrupt the Debtors' operations, jeopardizing patient health and resulting in significant losses.  Such an interruption would damage the Debtors' business to the detriment of their estates, creditors, and employees.  It is critical that the Debtors' utility services continue uninterrupted.

**Proposed Adequate Assurance and Adequate Assurance Procedures**

        9.      Sections 366(a) and (b) of the Bankruptcy Code prevent utility companies from altering, refusing, or discontinuing service to a debtor during the first twenty days of a bankruptcy case.  See 11 U.S.C. § 366(a), (b).  Thirty days from the petition date, however, a utility company may discontinue its services to a chapter 11 debtor, pursuant to section 366(c)(2) of the Bankruptcy Code, if the debtor has not provided such utility company with adequate assurance of payment "that is satisfactory to the utility."  11 U.S.C. § 366(c)(2).  MLBR 6012-1 provides that:

> [a] tender of adequate assurance of payment for utility service shall be deemed to be satisfactory within the meaning of 11 U.S.C. § 366(c)(2) unless a utility provides written notice to the debtor-in-possession . . . within fourteen (14) days after such utility's receipt of the tender of adequate assurance that such tender is unsatisfactory and that service will be terminated in accordance with § 366.

MLBR 6012-1.

        10.      To provide adequate assurance of payment for future services to the Utility Providers, the Debtors propose to provide each such Utility Provider with a deposit (a "Two Weeks Deposit") against the Debtors' postpetition utility service charges equal to approximately

4

25260636_9

two weeks' worth of the estimated cost of the Debtors' average annual consumption of such Utility Provider's utility services. The Two Weeks Deposits, which equal $56,184 in the aggregate, will be placed, collectively, into an interest-bearing, newly-created, segregated account (the "<u>Utility Deposit Account</u>") within twenty days after the Petition Date, with the funds in such Utility Deposit Account to be held in escrow pending further order of this Court. Absent further order of this Court, the Debtors will maintain the Utility Deposit Account with a minimum balance of $56,184 until the conclusion of these chapter 11 cases.

11. If the Debtors identify an Added Utility Provider (as defined below), the Debtors will increase the amount held in the Utility Deposit Account by an amount equal to the estimated cost of two weeks of utility services used by the Debtors, based on a yearly average, from such Added Utility Provider. Any amount by which the amount in the Utility Deposit Account is increased with respect to the Added Utility Provider shall also increase the minimum balance to be maintained in the Utility Deposit Account.

12. In addition, the Debtors seek to establish reasonable procedures (the "<u>Procedures</u>") by which a Utility Provider may request additional assurance of future payment if such Utility Provider believes that the provision of the applicable Two Weeks Deposit and the establishment of the Utility Deposit Account does not provide it with satisfactory adequate assurance, as follows:

    a. Absent any further order of this Court and except as otherwise provided in this Motion, Utility Providers may not (a) alter, refuse, or discontinue service to, or discriminate against, the Debtors on account of the commencement of these chapter 11 cases or any unpaid prepetition charges, or (b) request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges;

    b. The Debtors shall serve a copy of the Motion and a signed copy of the Interim Order via first-class mail, within five business days after the date that the Interim Order is entered

      by this Court, on each of the Utility Providers identified on Exhibit A. If the Debtors learn that a Utility Provider was omitted from Exhibit A, the Debtors shall file a supplement to Exhibit A, adding the name of such Utility Provider (the "Added Utility Provider"), and shall promptly serve such Added Utility Provider with a copy of the Motion and the Interim Order or, if it has been entered, the Final Order (each such service, a "Supplemental Service");

c. Any Utility Provider may request additional adequate assurance of payment (a "Request") within 14 days of such Utility Provider's receipt of service of an interim or final order approving this Motion or, with respect to Added Utility Providers, within 14 days of the receipt of Supplemental Service (the "Request Deadline") by serving a written request on Debtors' counsel, James A. Wright III, at Ropes & Gray LLP, Prudential Tower, 800 Boylston Street, Boston, MA 02199, which Request must be received by Debtors' counsel by the Request Deadline;

d. The Request must: (a) be in writing; (b) set forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), and the outstanding balance for each account; (c) include a summary of the Debtors' payment history with respect to each relevant account, including any security deposits or other prepayments or assurances previously provided by the Debtors; (d) provide an explanation of why the provision of the Two Weeks Deposit and the establishment of the Utility Deposit Account is inadequate assurance of payment; and (e) include a proposal for what would constitute adequate assurance of payment from the Debtors, along with an explanation of why such proposal is reasonable;

e. Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request, if the Debtors, in their discretion, determine that the Request is reasonable;

f. If the Debtors believe that a Request is unreasonable, they shall, within 30 days after the Request Deadline, seek a hearing pursuant to section 366(c)(3) of the Bankruptcy Code (a "Determination Hearing") for a determination by the Court as to whether additional assurance of payment to such Utility Provider is necessary. If the Utility Provider reaches an agreement with Debtors before the Determination Hearing, such agreement shall be deemed to be adequate

          assurance of payment that is satisfactory to the Utility Provider;

g. Pending the Determination Hearing, the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors or discriminate against the Debtors on account of the commencement of these chapter 11 cases or any unpaid prepetition charges, nor may the Utility Provider recover on or setoff against a pre-Petition Date deposit;

h. If a Utility Provider fails to send a Request by the Request Deadline, such Utility Provider will have waived its right to make a Request and will be deemed to have received, by virtue of the applicable Two Weeks Deposit and the Utility Deposit Account, adequate assurance of payment in accordance with section 366(c) of the Bankruptcy Code; and

i. Based on the provision of a Two Weeks Deposit and the establishment of the Utility Deposit Account, a Utility Provider will be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further assurance of payment.

13. The proposed Interim and Final Orders allow the Debtors to supplement the list of Utility Providers. The Debtors reserve the right, without further order of the Court, to supplement the Utility Provider list if any Utility Provider has been inadvertently omitted or if the Debtors require the services of additional Utility Providers.

**Basis for Relief**

14. This Court has the authority to grant the relief requested in this Motion pursuant to sections 105(a) and 366 of the Bankruptcy Code. Section 366 of the Bankruptcy Code is designed to protect a debtor against the immediate termination of utility services after it files for bankruptcy, while also providing utility companies with adequate assurance that the debtor will be able to pay for postpetition services. See H.R. Rep. No. 95-595, at 350 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Pursuant to this section, a utility may not, during the first 20 days of the case, alter, refuse, or discontinue services to a debtor in a chapter 11 case solely because of

7

25260636_9

unpaid prepetition amounts.  11 U.S.C. § 366(a).  However, the utility may do so thereafter unless the debtor (as the Debtors seek to do pursuant to this Motion) furnishes "adequate assurance" of payment, in the form of a deposit or otherwise, for postpetition services in a form "satisfactory" to the utility within 30 days of the petition date.  11 U.S.C. § 366(c)(2).

15. Section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 105(a) operates "to facilitate the implementation of other Bankruptcy Code provisions," and in so doing it provides a "bankruptcy court with broad authority to exercise its equitable powers."  Ameriquest Mortgage Co. v. Nosek (In re Nosek), 544 F.3d 34, 43 (1st Cir. 2008) (internal citations omitted).  These equitable powers are granted to effectuate the policies and goals of chapter 11 reorganization, which are to rehabilitate the debtor, In re Ionosphere Clubs, Inc., 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989), and to "create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately."  Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987).  See also In re Structurlite Plastics Corp., 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) (rejecting a bright line rule prohibiting payment of prepetition debts because it "may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code").

16. The Debtors submit that the Court should grant the relief requested in this Motion because such relief is necessary to continue the Debtors' normal business operations and to preserve the Debtors' ability to restructure their businesses in an orderly manner.  The Debtors could face a severe cash drain if the Utility Providers condition the provision of postpetition

8

25260636_9

services to the Debtors upon the payment of exorbitantly burdensome and/or unreasonable deposits or other forms of adequate assurance.

17. Section 366(c)(1)(A) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that "assurance of payment" means "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1)(A). Section 366(c)(3), however, provides the Court the authority to determine the amount of assurance that is adequate. See 11 U.S.C. § 366(c)(3). Accordingly, while the statute specifies the *form* of assurance that will be deemed to be adequate, the question of the *amount* of assurance that must be provided remains within the Court's discretion.

18. Leaving the determination as to the amount of assurance of payment that a debtor will need to provide in the discretion of the Court conforms with pre-BAPCPA caselaw, under which courts generally looked to the facts and circumstances of each case to ensure that utility companies were not subjected to an unreasonable risk of nonpayment for post-petition services. In In re Keydata Corp., 12 B.R. 156 (B.A.P. 1st Cir. 1981), the United States Bankruptcy Appellate Panel of the First Circuit observed that "'adequate assurance of payment' does not require an absolute guarantee of payment." Id. at 158. And the Bankruptcy Court for the Southern District of New York has stated that "[i]n determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services." In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002). The essence of the Court's inquiry is an examination of the totality of the circumstances to make an

9

informed judgment as to whether utilities will be subject to an unreasonable risk of non-payment. See id. at 82-83. See also In re George C. Frye Co., 7 B.R. 856, 858 (Bankr. D. Me. 1980) ("[e]very Section 366(b) proceeding must be decided upon its unique facts and the ultimate finding by the Court must be that the utility involved has, or has not been provided with adequate assurance of payment[;] . . . the Court must find that the utility is not subject to an unreasonable risk of future loss.").

19. As set forth above, if the Utility Providers are permitted to terminate utility services on the thirty-first day after the Petition Date, a substantial disruption to the Debtors' operations will occur, and the Debtors and their patients will be irreparably harmed. If faced with imminent termination of utility services, the Debtors would be forced to pay whatever amounts are demanded by the Utility Providers to avoid the cessation of essential utility services and a severe disruption of Debtors' operations, which would seriously jeopardize patients' health and safety.

20. The Debtors submit that providing the Two Weeks Deposits in the Utility Deposit Account, a substantial cash reserve relative to the Debtors' estimated monthly consumption of utility services, provides adequate assurance to their Utility Providers under section 366(c) of the Bankruptcy Code. The proposed Procedures are consistent with and serve to augment MLRB 6012-1. In addition, the Debtors submit that the Procedures set forth in the Motion, whereby any Utility Provider can request additional adequate assurance if it believes there are facts and circumstances that would merit greater protection, provide an orderly process for giving adequate assurance of payment to the Utility Providers without risking irreparable harm to the estates.

21. Relief similar to that requested herein has been granted in this district since the enactment of BAPCPA. See, e.g., In re Sherburne Commons, Inc., Case No. 08-18026 (Bankr.

10

D. Mass. Oct. 28, 2008, Nov. 20, 2008) [Docket Nos. 53, 133]; In re Tools 4 Hire, et al., Case No. 06-14004 (Bankr. D. Mass. Nov. 27, 2006) [Docket No. 98]. Moreover, the rights of the Utility Providers will not be prejudiced should the relief requested herein be granted, because the Utility Providers are permitted to come before this Court and seek relief according to the Procedures established herein.

22. Nothing in the Motion should be construed as an assumption of any executory contract or unexpired lease between the Debtors and any of the Utility Providers, nor should it be construed as a rejection of any executory contract or unexpired lease with any Utility Provider. The Debtors are in the process of reviewing these matters and reserve all of their rights with respect to the assumption or rejection of any executory contracts or unexpired leases. Furthermore, the Motion shall not be construed to limit, or in any way affect, the Debtors' right to contest on any grounds the amount claimed to be due by any of the Utility Providers.

23. Nothing in the Motion should be construed as impairing the Debtors' rights to contest the amount or validity of the obligations owed to the Utility Providers, and the Debtors expressly reserve all their rights with respect thereto.

24. Accordingly, based on the foregoing facts and authorities, the Debtors respectfully submit that the relief requested in this Motion is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## Waivers

25. To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

11

## **Notice**[3]

26.     No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases.  The Debtors served notice of the Motion on: (i) the Office of the United States Trustee for the District of Massachusetts; (ii) the creditors holding the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iii) MDFA; (iv) BONY; (v) counsel to Wells Fargo; (vi) counsel to U.S. Bank; (vii) counsel to Nuveen; (viii) counsel to ACA; and (ix) the Utility Providers listed on Exhibit A.  In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

## **No Prior Request**

27.     No previous motion for the relief requested herein has been made to this or to any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an Interim Order, substantially in the form attached hereto as Exhibit B, and a Final Order, substantially in the form attached hereto as Exhibit C: (a) prohibiting the Utility Providers from altering, refusing, or discontinuing service to the Debtors except as set forth in the respective Interim and Final Orders; (b) deeming the Utility Providers to be adequately assured of payment on the basis of the provision of the Two Weeks Deposits and the establishment of the Utility Deposit Account; (c) establishing procedures for resolving requests for additional assurance of payment; and (d) granting such other and further relief as this Court deems just and proper.

---

[3] Capitalized terms used but not defined in this Notice section shall have the meanings given in the Hickey Declaration.

12

25260636_9

Dated: Boston, Massachusetts
      June 13, 2011

Respectfully submitted,

*/s/ Steven T. Hoort*
Steven T. Hoort (BBO No. 239380)
James A. Wright III (BBO No. 671822)
Jonathan B. Lackow (BBO No. 670060)
Matthew F. Burrows (BBO No. 677016)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Tel:  (617) 951-7000
Fax: (617) 951-7050

E-mail:
    steven.hoort@ropesgray.com
    james.wright@ropesgray.com
    jonathan.lackow@ropesgray.com
    matthew.burrows@ropesgray.com

PROPOSED COUNSEL TO THE DEBTORS